Good morning, Your Honors. May it please the Court, my name is Jesse Finlayson. I represent the appellant Todd Freely, the Chapter 7 Bankruptcy Trustee for Rick Reynolds. I'd like to at some point in your comments ask each counsel to address the question whether this would be an appropriate case in which to certify a question to the California Supreme Court about how the statutes operate. I'll address that issue initially, Your Honor. I don't think that it would be inappropriate. Both the lower courts noted this is an issue of first impression and it certainly hinges on the proper interpretation of the California Probate Code. On the other hand, it's a practical matter. This appeal has been pending for a great deal of time. It would take a long, long time. It would, and we have an extensive record of two federal courts attempting to wrestle with these issues, and I think it's something that's appropriate before this Court at this time. From our perspective, we would like a ruling as soon as possible so that we can complete administration of the bankruptcy estate. Basically, this case comes down to a relatively straightforward statutory interpretation issue. The parties generally agree as to the application of the bankruptcy code and that the ultimate determination is going to hinge on the relevant provisions of the California Probate Code. As I just indicated, the lower courts agree that this is essentially an issue of first impression. Despite what the lower courts have suggested, the relevant provisions of the Probate Code viewed in context together are actually fairly straightforward and reasonable and understandable. They follow a fairly standard and logical format and can be understood if you read them from start to end. Sections 5300 and 5301 of the Probate Code provide the basic rules for what interests in a spendthrift trust are protected and the extent of that protection. Under Section 5300, income produced by a trust is protected unless covered by one of the specific exceptions listed in the statute. Under Section 15301, the principal interest in a trust is protected. The principal interest? Do you mean the principal amount? The principal amount. Okay. The trust corpus is protected. Okay. Sorry. As long as it's retained in the trust. And 15307 deals with income. No, it doesn't, Your Honor. The language of 15307, that was the ruling of the Bankruptcy Appellate Panel, but we believe that was an error. The plain language of Section 15307 states that any amount, that's the exact language of the statute, due to a beneficiary under the terms of a spendthrift trust that is not needed for the beneficiary's education or support can be reached by a creditor. 15307 specifically cross-references 15301, which only applies to principal. 15301, which only applies to principal, specifically cross-references 15307. So we believe that the plain reading of 15307, which is clear. Incorporates that as well. Absolutely. And that was what the BAP dissent raised. And on that point, Your Honor, the appellee, the Respondent, actually went as far in their answering brief to provide the Court with a red-line version of how the statute would have to read in order for it to be consistent with the BAP's opinion. And the debtor specifically acknowledged that the term, I believe it said interest in the trust, would have to be changed to read income in order for it to be consistent with what the BAP said it meant. We provided an illustration in our answering brief that makes it clear that, or our reply brief, that in fact the problem is much deeper, that you would actually have to do a wholesale rewrite of 15307, making at least seven substantive changes in order to actually limit that section solely to income. So fundamentally, our argument is, Your Honor, first, we are dealing here unquestionably with distributions of trust principle. The undisputed evidence before the Bankruptcy Court is that none of the assets of this trust produce any income, and that the property that will be distributed is solely principle. Under 15301B of the probate code, distributions of principle are not protected. And when you say distributions, do you draw, do you distinguish between distributions that have been made on the one hand versus distributions which are due and payable on the other? The language of the statute, Your Honor, is due and payable. What I believe that means is that you can't invade the trust and attach assets of the trust so long as they are retained. But when the, by the terms of the trust or pursuant to the discretion of the trustee, principle assets are being distributed to the spendthrift for the spendthrift to use as he or she sees fit. 15301B says at that point a creditor can reach those assets, can't anticipate those distributions. Can't anticipate? Yes. Right. So in other words, the trustee's decision, because the trustee knows if I give it to the beneficiary, this spendthrift, if I give it to the beneficiary, it's gone. It's gone. It's gone one way. It's gone another way. It's going to pay the creditors or who knows what. Okay. So he says this is what I'm going to do. I'm just going to, I know it's due and payable, but I'll simply hold on to it. This particular trust doesn't provide that discretion. There are mandatory $100,000 per year distributions. So it's not this case. No. I was prepared to sort of think about if it were this case, but it's not even this case. It is not, Your Honor. There is a provision in the probate code that's not one of the ones that we submitted that addresses your exact issue, which says a creditor cannot force a trustee to exercise discretion to make a distribution that's not required by the trust. So that's not our situation. But under 15301B, once there is a distribution of principle due and payable pursuant to the terms of the trust, a creditor can anticipate that, can obtain an order from the court directing payment of that amount to the creditor. And under this court's authority, interpreting the scope of the spendthrift protection in a bankruptcy scenario, if a creditor can anticipate a payment, if a creditor can reach those amounts, the bankruptcy trustee has the exact same rights. And therefore, those amounts become property of the bankruptcy estate. And that's the threshold issue here. We believe, because there is nothing at issue here but principle payments, that under 15301, as a matter of law, clear statutory interpretation, any amounts paid from the trust, in principle, are property of the bankruptcy estate and should have been given to the bankruptcy trustee 100 percent. Alternatively, under 15307, which we believe applies both to principle and to interest, we believe there was no showing made at the bankruptcy court level that the funds in question, $100,000 per year, were for educational support. And that code section, as I tried to explain earlier, relatively clear that absent evidence that the funds are needed for the educational support of a debtor, that creditors can anticipate those payments and, again, can reach them. And there was certainly not sufficient evidence presented to the bankruptcy court for the court to make a decision on that issue. And so summary judgment was inappropriate. The bankruptcy court's reasoning on that point, this is, one of the challenges on this appeal is that there are two layers of decisions. The bankruptcy court interpreted the probate code in one manner. And the bankruptcy appellate panel essentially overruled the bankruptcy court's interpretation and came up with its own entirely different interpretation. But I'll take them in turn briefly. The bankruptcy court ruled that the exception under 15306.5, which has a 25 percent cap on it, applied to limit all of the other exceptions to the probate code, so that under no circumstance can a creditor reach more than 25 percent. And all of them. Even if it were distributed? Once the actual distribution is received and it's in the debtor's bank account, any creditor can attach it. So you're saying that the court below said that it couldn't be, that you couldn't anticipate a distribution and attach, or garnish, or whatever that word is, 100 percent. Yes. You were limited to 25 percent. And the court expressed extreme unease with that under the facts of this case and the apparent unfairness. Well, it's unfair. Any spendthrift is unfair. But, I mean, that's a different issue. Since spendthrift trusts, it's all created by state. Since spendthrift trusts are recognized, yet there's an exemption or exception to it of a 25 percent limitation. So there's sort of, they're recognized up to 75 percent. Because, after all, the trustor, the settlor, may decide to give the money to somebody else or do something else with it. If he thought he would go to his profligate son and be spent on swimming pools or something. Or the track. So there's an exception. And the exception is 25 percent. And what did the bank, what did you say that the court below, the bankruptcy court below said about that? The bankruptcy court felt that that 25 percent exception applied across the board to all of the other exceptions to the probate code, including 15-307, and limited her ability to allow the creditors to reach a greater percentage. And, again, she expressed pretty significant unease with that decision. The bankruptcy appellate panel, all three judges, even though they sharply disagreed on other issues, agreed that that wasn't the proper interpretation of the probate code. And if I can give you what we believe the proper interpretation is, I think it's fairly reasonable. It's Judge Pappas' opinion. Correct. Judge Pappas, well, Judge Pappas wrote the dissent in the bankruptcy appellate panel. Even the majority judges felt that Judge Jury, the original bankruptcy judge at the trial court level, had misinterpreted the code sections. The correct interpretation is that 15-306.5, which is the 25 percent section, allows creditors, without any showing whatsoever, to reach 25 percent of spendthrift's interest in the trust, principal or interest. That 15-307 deals with the remaining 75 percent. And 15-307 says if the creditor can make a showing that it's not necessary for the education and support of the beneficiary, the creditor can reach the entire amount. And the discretion on that point is with the judge making the determination. The way that works as a practical matter under state law is that you have to make an application under the Code of Civil Procedure to a probate code or superior court judge and make that showing. In our situation, that issue would be presented to the bankruptcy judge who would make a factual determination under 15-307 as to the amount of income reasonably needed for the... I'm sorry. I actually thought the opinion said that if the money is distributed to the debtor... I mean, not the debtor. Well, he is the debtor. In this case. Yeah. If it's distributed to the debtor, then there's a procedure that you can then make an application. The creditor then can make an application for an amount greater than 25 percent. That is, at the beginning, the creditors can hold back 25 percent. But subsequently, if they want a larger amount, they have to make this application. I guess, is it through the bankruptcy court? Is that your view? In the case where there's been a bankruptcy filed, the bankruptcy court has exclusive jurisdiction. And so the bankruptcy court would make that determination. Outside of bankruptcy, the application would be made to a state court judge. In either event, there's an important timing issue. All of this, the whole issue on spendthrift trusts is can you anticipate the payments? Can you reach the payments before they get to the spendthrift? Because, as you aptly noted, once they go to the spendthrift, they are gone. And so the issue here is not a timing issue. You don't need to wait under any of these exceptions for the money to actually go to the spendthrift to make an application. If you obtained a judgment under state law, you would have a right under 15306.5 to make an application and obtain an attachment order directing payment of up to 25 percent. For the other 75 percent. For the first 25, as a matter of right. As to the other 75 percent, the only difference is you have an affirmative duty to make the showing. So that it's not for support and education. And that's the issue the bankruptcy court didn't take up. And if the court finds that these are principal distributions under 15301B, they are not protected. And so the court can order as a matter of law that they belong to the bankruptcy estate. If the court finds that that, and I think that's undisputed, if for some reason the court doesn't agree with that analysis, our fallback position is that the bankruptcy court was required under 15307 to look at the actual amount needed for the education and support of the beneficiary and to make a determination as to what portion should go to the bankruptcy estate to pay legitimate creditors and what portion the debtor legitimately needs for education and support. You're down to about a minute and a half. If you want to save room for rebuttal. I would, Your Honor. Thank you. Thank you. We'll hear from Mr. Meadows. May it please the court, David W. Meadows appearing on behalf of the debtor and the appellee. By way of introduction, I want to inform the court that I did not represent the debtor at the bankruptcy court level. At the bankruptcy appellate panel level, he was unrepresented completely either on briefs and on oral argument. So now I'm hoping here where I am representing him that I don't make anything worse for him. Could you, again, by answering my question about whether certification is appropriate. Yes, Your Honor. But essentially you've anticipated my whole theme of my presentation to you. I don't think it's necessary for you to certify it to the California Supreme Court. But I do think it's important to take, to keep in mind my, essentially that until these bankruptcy attorneys came to you, according to the case law, nobody else has really ever had a problem reconciling these probate code sections. Searches for 13306.5 in the same case involving 13307 only came up with a few hits. Most of them relating to the cases brought to you having to do with our case. So I think that you could. Pardon me, Your Honor? Doesn't Hamaco have both of them in it too? That one I don't, but I don't recognize that, I don't recognize that case, but I don't believe that it would have had to do with reconciling 306.5 and its 25K limitation, 25% limitation. But I really want to answer your question, Your Honor, by going this way, which is by saying that I think that you, the theme of the case for me, Your Honor, is to get you not only to affirm, but to leave the case law alone by just affirming it. And let me see if I can approach it in this way. How can I get there? From a factual point of view, there aren't any facts for me to argue about because we all agree that what's at issue left in the trust to distribute is principle only. That might have presented an interesting issue in terms of what happens to principle once real estate is sold. Does it become something else? Fortunately, the probate code answered that. That was in my brief. It's still principle no matter what. So that takes us then to, in terms of leaving the case law alone, to the policy arguments that Judge Pappas raised and to the statutory interpretation. I'd like to start with what Judge Pappas said as the bankruptcy judge in the dissent. Why don't you start with the statute, which is where we have to start? All right. Let me do it like this. I think Section 307 is understood to apply to income. The reason it is is because it says so on its title. And most particularly, if you read, when the court reads the Law Revision Commission report, everything about 13307 is described as a section that was meant to replace Section 859. And the sentences are clear. It's about income. It never really says that, though. It says 13307? 13307. I thought you said 15307. Did I misspoke? I'm sorry. You mean 15307, don't you? I mean 15307. Right. And Judge Graber points out it doesn't say income. It says any amount to which a beneficiary is entitled under the trust instrument, et cetera, et cetera, et cetera. But the title of it is income. Not in the copy I copied off on the Internet, so I don't know. It has no title at all. 15307, income in excess of amount for education and support. That's interesting. The copy I have doesn't have any title, and that leads me to a question that has maybe not been addressed previously. Under Oregon law, the title of a statute is by law not relevant to interpreting the text of the statute. The Federal rule is the opposite, that if there's an ambiguity, the title can be useful. What's the rule in California? I don't know it, Your Honor. I don't either. I guess we'll figure it out. I know that my West version that I've used all this time, and that I argued about in my brief, has income in excess of amount for education and support in the heading. And I know that the Law Revision Commission report, which I felt was so important I repeated it verbatim in the brief, talks about income and that it is meant to provide for access for ordinary creditors to income. The last paragraph of the revision report paragraph is also helpful because it says there are other provisions under the probate code that will let people reach even more. For example, if you're a specialized form of creditor, if you're a spousal support creditor, for example. So your point is if it's 15307 related to income, we don't even have to go there under the faxes? Correct, Your Honor. And that's how the BAP looked at it, and that is how I believe Judge Drury looked at it as well. 15307 doesn't help us here, doesn't need to change anything here, because we're talking about principle, not income. But there are more ways that you can get to the cap, which I think is the fundamental theme that runs through the law. I interpret the code section, probate code schematic, differently than my colleague does. I think you start at 15300 and 15301. They each start out the same way with the preamble saying, and these provisions saying, under these sections, nobody gets anything under the Spendthrift Trust Beneficiary. No distributions at all. But that absolute bar is subject to some carve-outs, and those are set out in 13304 through 13307. So, for example, I disagree with my colleague when he says that 15301B, dealing with principle, is no restraint at all. It took me a long time to figure out, well, what did he mean by that? And he means that B doesn't include any kind of cap. But you don't get to that. But subsection B follows from subsection A, and subsection A says it's subject to 304 to 307. But that's not all it says. It says, except as provided in subdivision B. But that's where it starts. And so then you look at subdivision B. But I presume that of that same section, subsection A also applies. And both 300 and 301 say you're subject to this absolute bar is subject to. But it's different. 300 says, except as provided in 304 to 307. But 301A says that, but also, except as provided in subdivision B. So you don't have to look to 304 through 307 if subsection B of the same section applies. So the first place you're supposed to look is at 301B, just under the grammatical structure of that sentence in 301A. So the first place to look is 301B. Your Honor? It says, except as provided in subdivision B. And these other exceptions. So those are a series of exceptions. I'm not sure. I believe your position, Your Honor, is that 301B as a subsection is not subject to 304 through 307. That's how I read it. It's a separate exception. And there's a logic behind it. The logic, as I understand it, I could be wrong, but the logic behind it is that once something becomes due and payable, what did the settler think? What the settler thought is that the beneficiary is going to get it. It's no longer, though technically it may still be an asset of the trust, basically it's an asset which is being distributed. Yes. And therefore, since it's being distributed, why treat it differently from anything else that's distributed? The settler doesn't have an expectation. His expectation is that his profligate son can't go in and invade the principal. Once the principal is due and payable to the profligate son, all bets are off. All bets are off. That's what he thinks. I think he also. Or he writes it a different way, that he never gets the money or doesn't get it. Gets it when he's 80. I don't know. Your Honor, I don't know what would be in the mind of that settler, but I do know that from reading the case law and reading the commentary, that the judgment creditor's treatment has been understood and under the commentary is capped. The judgment creditor's distribution is capped at 25%. And I read the statutes as getting there because they all state that they are subject to the provisions of 304 through 307. With 306-5, it began there. And Jeff Graber points out this is 301. And it doesn't say that. That's one of the exceptions, but 301B is the other exception. If that is a correct reading, your client is out of luck, correct? I know you don't agree with it, but would that end the analysis? Your opposing counsel has said if 301B applies, that's the end of the analysis. You don't need to think about what 307 means. And insofar as that construct is concerned, do you agree with that? That is, if he's right about 301B, would we have to reach 307? I agree with that. You wouldn't need 13307. If all distributions under 15301B. Okay, that's what you got me. I'm coming through my notes here trying to find that. Sorry. No, that's okay. Right. But I don't understand how 15301B cannot be subject to the cap of 25% under 15306.5. I don't understand it when 15306. Because it doesn't say it. That's one reason. It doesn't say it. It's subject to the cap and whatever that statute just said. It doesn't say it. I mean, listen, State legislatures may not be fabulous in drafting legislation. This may be an example. Nevertheless, it doesn't say what you would like it to say, does it? As being corrected by you, no, it doesn't, Your Honor. It doesn't. I understood 15. I've argued in my briefs and here today that 15301B is still subject to the language of 304 through 307. If as a matter of statutory construction, if you disagree with me, then. Well, if that's true, though, what function would 301B play? If everything, including 301B, is subject to the remaining sections that we've been talking about, it seems to me that there's nothing left for 301B to do. It seems like it would be surplusage. I don't think it is, Your Honor, in that it provides for the procedure for going about how to go and get it. But I don't believe, Your Honor, I have an adequate response for you. Thank you. I'm not sure, you know. The theme of the question of the presentation had to do with not changing the law. Judge Pappas' dissent seemed to be a statement where that if facts were egregious, facts that weren't part of the record, that there should be a way to get through to it. As a bankruptcy attorney, I agree that there ought to be a way to get to an equitable result, but we're stuck with things like Butner v. U.S. that says the rights are established by state law. And all the other courts that have looked at this, including in the bankruptcy context, have viewed it as a 25 percent limitation. And so I felt that Judge Pappas' concern on facts that weren't before him, that aren't part of the record, or even in a hypothetical that isn't articulated, that I wouldn't want to see us change the law on account of that. And that's why I would affirm the decisions. I would affirm the decisions. If you think that in particular that in a way if maybe things have been made worse, then I would want to see us certify it to the Supreme Court so that in particular it's made better or worse by a court dealing with public policies involved. We haven't got a conflict here between the bankruptcy code and probate code. What we have is an interpretation about how much any creditor, whether it's a trustee or any creditor, should get, apparently from principle. Everybody who's looked at it so far seems to think you're limited at 25 percent. You're eliciting arguments that maybe seem to raise a question about that. I would leave it alone. I would not make it worse. Those are the two things I would do. Thank you, Your Honor. Thank you, Counsel. Mr. Finlayson, you have a short amount of time remaining. I will be brief. I think the way that the court's framed the issue is correct, the analysis. 15300 and 15301 provide the basic rules for what is protected. 15304 through 15307 provide exceptions. If there's no protection in the first place for the policy reasons Judge Breyer stated, then you don't need to get to the exceptions. Here there's absolute agreement that all distributions are being made from principle. Distributions of principle are not protected under the probate code. I think that's a clear reading. To interpret the statute the way that Mr. Meadows does, where the 25 percent cap in Section 15306 applies to every other possible exception, it would render large portions of the sections irrelevant or surplusage. A good example of that is 15304, which deals with self-settled trusts, where a settler creates a spendthrift trust for his own benefit and then says, my creditors can't reach it. The legislature said that's invalid. According to Mr. Meadows, that would be subject to a 25 percent cap so that a settler could do exactly that and somehow keep 75 percent of his assets. That's obviously not what the statute was intended to say. On the final issue, I will acknowledge the word income is in the title of Section 15307. I don't believe that one use of the term is sufficient to create an ambiguity. What's the rule in California about the title of the statute? I honestly don't know for sure either. I don't know. But the text of the statute I think in this case should govern, and I think it is clear, the multiple cross-references between the code sections. The easiest way, the course of least resistance here is, I guess, never to get to that question based on the facts of this case, to rule based on the principal issue under 15301B and to not reach exactly how to interpret 15307. If you do reach 15307, we've laid out our arguments in our brief, and we think it is clear that there was a revision to the law which was clearly intended to change the scope of 15307 from its predecessor to apply to all interests in the trust. And it says it repeatedly in the text of the section and cross-references sections dealing with principal. Thank you. Thank you, Your Honor. The case just argued is submitted. We appreciate very much the arguments of both counsel. They've been helpful.
judges: Breyer, Kozinski, Graber